**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ANNITA RIVERA and MAURICIO ANTONIO RIVERA CASTILLO, | ) | |
| Plaintiff, | ) | Case No. 26-cv-11422 |
| v. | ) | Judge Sharon Johnson Coleman |
| MARCO RUBIO, in his official capacity as Secretary of State, *et al.*, | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Annita Rivera ("Ms. Rivera") and Antonio Rivera Castillo ("Mr. Rivera Castillo" and, together with Ms. Rivera, "Plaintiffs") bring this action against Marco Rubio, in his official capacity as Secretary of State, and the United States Department of State (together, the "State Department") under the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 *et seq*. Plaintiffs seek declaratory and injunctive relief related to Mr. Rivera Castillo's visa interview and application. Before the Court is Plaintiffs' motion for a temporary restraining order [2] and, following any hearing the Court may set, a preliminary injunction. For the reasons set forth below, the Court grants Plaintiffs' motion.

## BACKGROUND

### I. Legal Background

The Immigration and Nationality Act ("INA") governs the admissibility of immigrants into the United States. 8 U.S.C. §§ 1101 et seq. An immigrant residing abroad may obtain an immigrant visa through an application process. *See* 8 U.S.C. 1202(a). The INA dictates that immigrant visa applications be reviewed and adjudicated by consular officers. 8 U.S.C. § 1202(b). The INA further provides that the Secretary of State is "charged with the administration and the enforcement of the … powers, duties, and functions of diplomatic and consular officers of the United States, except

those powers, duties, and functions conferred upon the consular officers relating to the granting or refusal of visas." 8 U.S.C. § 1104(a).

A noncitizen may secure a family-based visa through submitting an I-130 Petition. An I-130 Petition is a form submitted by a U.S. citizen or lawful permanent resident who wishes to establish a familial relationship with a relative intending to immigrate to the U.S. *See* USCIS, I-130, Petition for Alien Relative, Form Details ("I-130 Form Details"), available at https://www.uscis.gov/i-130. If the I-130 Petition is approved, the noncitizen applies for an immigrant visa with a consular office. *Id.* The consular office then reviews the visa application as described above. *See* 8 U.S.C. § 1202(b). Among several other requirements, the visa application requires the submission of civil documents such as birth and marriage certificates, as well as an interview at the relevant embassy. *See* 8 U.S.C. §§ 1201(a)(1), 1202(b), (h).

*a. The 75- Country Policy*

On January 14, 2026, the Secretary of State issued a directive to consular officers to refuse immigrant visa applications from nationals of 75 listed countries. *See* 26 STATE 3740, "Pausing Immigrant Visa Issuances for Nationalities at High Risk of Public Charge" (the "75-Country Policy"). The Secretary of State instructed consular officers to "continue to conduct interviews," to "continue to adjudicate all immigrant visa cases," and ordered the officers to refuse every executed application. *Id.* The 75-Country Policy did not apply to El Salvadorian nationals.

In August 2026, the 75-Country Policy was vacated by a New York district court in *Catholic Legal Immigration Network, Inc. v. Rubio* ("*CLINIC*"). The *CLINIC* court ruled that, because the INA expressly reserves the power to grant and refuse visas to consular officers, the State Department has no authority to dictate the outcome of visa adjudications. 2026 WL 2455099, at *4 (S.D.N.Y. Aug. 21, 2026). On August 28, the State Department informed the *CLINIC* court that it was "treating the [75-Country Policy] as no longer operative and is implementing the [court's] Judgment."

*CLINIC*, Case No. 1:26-cv-858-JAV, ECF No. 90, at *3 (S.D.N.Y. Aug. 28, 2026). The State Department claimed to be "coordinating guidance to U.S. embassies and consulates on implementation of the Court's order, including guidance for processing applicants previously refused solely under the [75-Country] Policy," and that "[t]o allow time for appropriate coordination on guidance … and to account for updated procedures … the Bureau of Consular Affairs is rescheduling immigrant visa appointments." *Id.* Plaintiffs characterize this decision as a full suspension of visa interviews, terming it "the Pause."

## II. Factual Background

Mr. Rivera Castillo is a citizen of El Salvador. He arrived in the United States in January 2004 and has lived in the Chicago area for more than twenty-two years. He married Ms. Rivera, a U.S. citizen, in 2013. The two have a ten-year-old son, who has autism and receives special-education services. Ms. Rivera filed a Form I-130, Petition for Alien Relative, for her husband, which was approved by U.S. Citizenship and Immigration Services ("USCIS") on April 17, 2017.

On August 11, 2026, an immigration judge determined that Mr. Rivera Castillo was removable "[b]ased on [his] admissions," noting that he "made an application solely for voluntary departure in lieu of removal." Dkt. 1-8. The immigration judge granted him voluntary departure prior to the conclusion of his removal proceedings. *Id.* He was granted voluntary departure "on or before 09/10/2026," and would otherwise be removed to El Salvador if he did not comply with the judge's order. *Id.* Later the same day, Mr. Rivera Castillo voluntarily departed for El Salvador for his visa interview, which was scheduled for August 12.

The U.S. Embassy in San Salvador requires two visits: one for a "Document Review" and one for the "actual visa interview." Dkt. 1-11, U.S. Embassy in El Salvador, "Important Update: Immigrant Visa Interview Appointment," available at https://sv.usembassy.gov/important-update-immigrant-visa-interview-appointment/. Mr. Rivera Castillo arrived at the U.S. Embassy for his visa

interview on August 12th but was unable to proceed with the interview. Specifically, he had not undergone a medical examination, which he was required to obtain prior to his visa interview. While awaiting a new visa interview date, he underwent the required medical examination on August 19.

Before he obtained a new interview date, Mr. Rivera Castillo appeared at the U.S. Embassy on August 20 for his mandatory Document Review as required by the visa application process. He presented his original civil documents, including his birth and marriage certificates. The consular officer indicated that the only items left for Mr. Rivera Castillo's application to be documentarily complete were a police clearance certificate and waiver approval, which he had to present before his rescheduled interview. He uploaded the documents to the State Department's online system on September 2, 2026. His rescheduled interview was set for September 16, 2026.

On August 30th, Mr. Rivera Castillo received an e-mail stating that his appointment for an interview "has been rescheduled" and that he would "receive email confirmation of [his] new appointment date and time." He never received such confirmation. He appeared at the U.S. Embassy for his previously scheduled visa interview on September 16 but was turned away. To date he has not been rescheduled for an interview and has remained in El Salvador.

Plaintiffs attribute Mr. Rivera Castillo's situation to the Pause. Plaintiffs filed this action on September 18, 2026, pleading four counts under the Administrative Procedure Act ("APA"). Plaintiffs request that the Court issue an order (1) enjoining the State Department from applying the Pause to Mr. Rivera Castillo's case, (2) requiring the U.S. Embassy in El Salvador to interview him within seven days, (3) requiring adjudication of his visa application within fourteen days after his interview, (4) barring termination of his registration, revocation of his waiver, or other adverse action on account of Pause-caused delay, and (5) requiring a status report. Dkt. 12-1 at *13. Six

days after Plaintiffs filed this motion, the State Department confirmed that Mr. Rivera Castillo's case is "documentarily qualified" and that he "just needs to have an interview." Dkt. 16-3 at 7.

## LEGAL STANDARD

In this District, "[t]he standard for issuing a TRO is the same one that governs issuance of a preliminary injunction." *See Mays v. Dart,* 453 F. Supp. 3d 1074, 1087 (N.D. Ill. 2020) (Kennelly, J.) (internal citations omitted). A party seeking a preliminary injunction must show that "(1) he has some likelihood of success on the merits of his claim; (2) traditional legal remedies are inadequate; and (3) he would suffer irreparable harm without preliminary injunctive relief." *Finch v. Treto*, 82 F.4th 572, 578 (7th Cir. 2023) (citation omitted). If the moving party satisfies these factors, the Court then conducts a balancing test, "weigh[ing] the harm of denying an injunction to the plaintiff against the harm to the defendant of granting one." *Life Spine, Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 539 (7th Cir. 2021) (citation omitted). The Court also considers the "public interest, meaning the consequences of granting or denying the injunction to non-parties." *Cassell v. Snyders*, 990 F.3d 539, 545 (7th Cir. 2021) (citation omitted). When the defendants are the federal government, the last two factors merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

## DISCUSSION

Plaintiffs seek a temporary restraining order or a preliminary injunction on the basis that the State Department is unlawfully applying the Pause to Mr. Rivera Castillo's case. They argue that the Pause is the State Department's "definite and final decision that immigrant visa interviews will not proceed during its 'global training initiative,'" causing posts to "cancel appointments … turn away applicants who appear, and suspend adjudication." Dkt. 2-1 at *6. The State Department argues that the 75-Country Policy never applied to Mr. Rivera Castillo, and his motion is tantamount to a request to "re-order the operations of a consular section in the middle of the State Department's implementation" of new procedures and training initiatives. Dkt. 19 at *2.

## I. Likelihood of Success

### *a. The State Department's Authority*

The State Department may not dictate whether a visa is granted or refused. The INA confers the "powers, duties, and functions … relating to the granting or refusal of visas" exclusively to consular officers. 8 U.S.C. § 1104(a). The 75-Country Policy indisputably did not apply to applicants from El Salvador and did not affect the outcome of Mr. Rivera Castillo's visa application. However, Plaintiffs contend that the Pause is in effect a refusal of Mr. Rivera Castillo's visa because it "does the same thing [as the 75-Country Policy] … Instead of ordering officers to refuse, it orders them not to adjudicate at all." Dkt. 2-1 at *8.

While it lacks the authority to grant or refuse visas, the State Department is otherwise "charged with the administration and the enforcement of the … powers, duties, and functions of diplomatic and consular officers of the United States." *Id.* Scheduling interviews is an administrative matter. The timing of his interview does not dictate whether Mr. Rivera Castillo's visa application will be granted or refused. In fact, Plaintiffs submit that their requested injunction would not compel any particular outcome with respect to Mr. Rivera Castillo's application, but only compel the government to schedule his interview and adjudicate his visa application.[1]

### *b. Final Agency Action*

Plaintiffs also contend that the Pause is a definite and final action by the State Department such that it is reviewable by this Court. Under § 706(2) of the APA, a review of the Pause as applied

---

[1] Plaintiffs also aver that "[the State Department's] own manual forbids the very thing the Pause does." Dkt. 2-1 at *7. The Foreign Affairs Manual ("FAM") issued by the State Department provides guidance that "[o]nce an application has been executed, [a consular officer] must either issue the visa or refuse it. [A consular officer] cannot temporarily refuse, suspend, or hold the visa for future action." 9 FAM 504.1. The FAM policy applies to consular officers, not to the State Department itself. Here, no consular officers made a decision to suspend adjudication and halt applicant interviews.

to Plaintiffs is available only if the Pause is a "final agency action." 5 U.S.C. § 704. An agency action is final where it "mark[s] the consummation of the agency's decisionmaking process" and is one "by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (internal citations and quotation marks omitted). Plaintiffs argue that the Pause is the State Department's "definite and final decision that immigrant visa interviews will not proceed during its 'global training initiative.'" Dkt. 2-1 at *6.

Plaintiffs cite the out-of-circuit case *Ivanov v. Trump* in support of their argument. However, the court in *Ivanov* found that the 75-Country Policy, as well certain measures placing a hold on diversity visas and instructing consular officers to deny such applications (the "Diversity Visa Policy"), constituted final agency actions. *Ivanov v. Trump*, 2026 WL 2494805, at *2–3 (D.D.C. Aug. 25, 2026). Specifically, the court found that the 75-Country Policy and the Diversity Visa Policy were indefinite "present and operative" directives rather than "tentative or interlocutory." *Ivanov*, 2026 WL 2494805, at 9. The court found that "legal consequences" flowed from the 75-Country Policy because it compelled refusal of visa applications, *id.*, and because the adjudicative holds imposed by the Diversity Visa Policy "deprive[d] [plaintiffs] of individualized consideration and … the opportunity to obtain a visa." *Id.* at *1.

Here, the State Department has not mandated refusal of Mr. Rivera Castillo's visa application, nor placed a hold on its adjudication. Rather, the State Department claims that the Pause is an undertaking to reschedule visa appointments globally while the State Department updates its procedures and conducts trainings to comply with the *CLINIC* decision. The Pause is tentative, as waiting for a rescheduled interview is by its nature temporary. Thus, the Pause is not reviewable as final agency action.

*c. Unlawfully Withheld or Unreasonably Delayed*

Finally, Plaintiffs claim that Mr. Rivera Castillo's interview has been "unlawfully withheld or unreasonably delayed," *see* 5 U.S.C. § 706(1), such that the Court should expedite the scheduling of Mr. Rivera Castillo's interview and visa adjudication. A court "shall … compel agency action unlawfully withheld or unreasonably delayed" where the agency "failed to take a discrete agency action that it is *required to take*." 5 U.S.C. § 706(1); *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) (emphasis in original). "[A] delay cannot be unreasonable with respect to action that is not required." *Norton*, 542 U.S. at 63 n.1.

The INA provides that "[a]ll immigrant visa applications shall be reviewed and adjudicated by a consular officer," 8 U.S.C. § 1202(b), and that every applicant "must be interviewed by a consular officer." 22 C.F.R. § 42.62(b)(1). These functions are certainly not "committed to agency discretion." *See* 5 U.S.C. § 701(a)(2). If every applicant "must be interviewed by a consular officer," then undoubtedly the *government* must *schedule* that interview. The fact that § 42.62(b)(1) provides no time limit to schedule an interview does not change the fact that the State Department is *required* to take that action. Thus, the Court may consider whether it must compel the State Department to schedule and conduct Mr. Rivera Castillo's interview.

Plaintiffs note that Congress spoke on how much time might be "reasonable" with respect to matters involving consular authorities. Congress stated that "[i]t shall be the policy of the [State] Department" to process an immediate relative's visa application "within 30 days of the receipt of all necessary documents." Pub. L. No. 107-228, § 233(a), 116 Stat. 1350, 1373 (2002 (8 U.S.C. § 1201 note). To be clear, the Court does not intend to impose a rigid time limit of 30 days within which all interviews must be scheduled under § 42.62(b)(1). It observes that Congress intended for visa adjudications to take place within a few weeks, which informs how the Court evaluates "unreasonable delay" in the context of scheduling visa interviews. Regardless of when his visa

interview takes place, the delay in moving forward with Mr. Rivera Castillo's visa application has exceeded the amount of time Congress intended for adjudicating cases of this nature. Additionally, Plaintiffs' proposed order does not seek to unfairly cut the metaphorical "line" for holding Mr. Rivera Castillo's interview and adjudicating his visa. Mr. Castillo Rivera *had* an interview; he had made it to the front of the "line" before the State Department cancelled it. Plaintiffs essentially ask this Court to order that the line keep moving after it has stalled.

In sum, the Court finds that the Pause falls within the State Department's statutory authority, and that the Pause is not "final agency action" such that judicial review is available. However, Plaintiffs have demonstrated they have some likelihood on the merits of their case with regard to the unreasonable delay in scheduling Mr. Rivera Castillo's visa interview and adjudication.

**II. Irreparable Harm**

Individuals possess "the fundamental right to the family unit." *Doe v. Heck*, 327 F.3d 492, 520 (7th Cir. 2003). Courts in this District confronting similar cases found that each day a father spends "a continent away" from his children "constitutes an irreparable injury for which there is no adequate remedy at law." *Leon Morales*, No. 26 cv-02893, ECF No. 47 at 22 (N.D. Ill. May 18, 2026) (Rowland, J.). This Court agrees.

The State Department asserts that the "core harm [P]laintiffs identify (separation from family and business) is the foreseeable consequence of the voluntary departure [Mr. Rivera Castillo] sought." However, it was not foreseeable that Mr. Rivera Castillo's interview would be cancelled and that he would be stuck in El Salvador indefinitely. Moreover, the State Department is also incorrect that the "timing and duration of that separation were within [Mr. Rivera Castillo's] control." He has no control over when his interview will take place.

Plaintiffs' injuries are also not "speculative." They have been demonstrably injured by Mr. Rivera Castillo's absence. Plaintiffs' circumstances also create a particular exigence: Mr. Rivera

Castillo left for El Salvador on August 11 and had an interview in hand as of August 20. His interview was cancelled through no fault of his own. He has been forced to stay in El Salvador without any interview scheduled, despite his application being documentarily complete and ready to proceed. He is unable to return to the United States lawfully until his visa application is adjudicated.

This delay has caused substantial personal and financial consequences for Plaintiffs. He has been separated from his family and unable to operate his mechanic business. Plaintiffs' ten-year-old son is autistic and receives special needs services. Ms. Rivera describes how their son "relies on both of his parents" and "cannot live separately from [Mr. Rivera Castillo] for any indefinite period of time." Dkt. 1-21, ¶ 4. As a result, Plaintiffs "must choose between keeping [their son] away from his father or keeping him away from his school, his services, and his home." *Id.* at ¶ 11. Such a dilemma poses significant hardships on Plaintiffs' family, especially his young child.

Plaintiffs also could not be adequately compensated for Mr. Rivera Castillo's inability to support his family while he is kept in El Salvador indefinitely. There is no practicable way to calculate such harm, and a remedy at law is inadequate. *See, e.g.*, *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of USA, Inc.*, 549 F.3d 1079, 1095 (7th Cir. 2008) (noting that a "circumstance leading to an inadequate legal remedy is when the nature of the loss incurred by the plaintiff makes it difficult to calculate damages"); *Newark Owens Wolf, Inc. v. Owens*, 514 F.3d 630, 632 (7th Cir. 2005) ("[I]t is precisely the difficulty of pinning down what business has been or will be lost that makes an injury 'irreparable.'") The Court finds Plaintiffs demonstrated their harm is irreparable, and legal remedies are inadequate.

**III. Balance of Equities and Public Interest**

Plaintiffs ask the Court to compel the State Department to conduct one interview and process a single visa application. The harm to the State Department if it is ordered to do so is slight. The State Department characterizes Plaintiffs' requested relief as "directing a consular section abroad to set aside its calendar … in the midst of implementing a federal judgment governing 43,000

other applications, for a single applicant." Dkt. 19 at *15. However, the federal judgment in *CLINIC* concerned the 75-Country Policy, which did not apply to El Salvador. In fact, the State Department represented to the *CLINIC* court that its "guidance" applied to reconsideration and "processing [of] applicants previously refused solely under the [75-Country] Policy." *CLINIC*, Case No. 1:26-cv-858-JAV, ECF No. 90, at *3 (S.D.N.Y. Aug. 28, 2026). The State Department has not shown that remedial measures arising from *CLINIC* bear on Mr. Rivera Castillo's case.

Nor will granting relief, as the State Department claims, "set[] a dangerous precedent, sending a clear signal that more litigious applicants are more likely to be moved to the top of the proverbial pile." Dkt. 19 at *15 (internal citation and quotation marks omitted). Again, Mr. Rivera Castillo was already at the top of the "proverbial pile," and his case was unimpacted by *CLINIC*. Mr. Rivera Castillo's circumstances distinguish his case: he already left for El Salvador for his interview and cannot return until after it occurs; he obtained an interview that he subsequently lost; and as a result, he and his family continue to suffer serious consequences. The public interest here favors fairness, avoiding unreasonable deferral, and protecting family unity. The Court finds that the balance of equities and the public interest favor Plaintiffs.

**CONCLUSION**

For these reasons, the Court issues a preliminary injunction directing the State Department to schedule a visa interview for Mr. Rivera Castillo at the U.S. Embassy in El Salvador within seven (7) days, which must be scheduled to take place no more than 30 days after this order.

**IT IS SO ORDERED.**

Date: 10/14/2026

Entered: ______________________________
SHARON JOHNSON COLEMAN
United States District Judge